James R. HALL, Brenda Hall, and Brenda Hall as guardian ad litem for Karla Hall, a minor, Plaintiffs and Appellants,

v.

Harold WARREN, Raur Warren, Gary Warren and Newell Warren, Defendants and Respondents.

No. 18820.

Supreme Court of Utah.

Oct. 19, 1984.

Robert M. McRae, Leon A. Dever, Vernal, for plaintiffs and appellants.

John R. Anderson, Vernal, for defendants and respondents.

HALL, Chief Justice:

Plaintiffs appeal an adverse judgment by the trial court in an action to recover damages from their landlords for personal injuries sustained as a result of a malfunctioning floor furnace in a rental unit. We reverse.

In February 1976, plaintiffs, a family of three, rented a Vernal City residence from defendants based on an oral month-to-month agreement. At the time of the incident at issue here, plaintiffs had occupied the house for almost three years. On January 22, 1979, the floor furnace in the house malfunctioned, emitting gases that caused asphyxiation of the plaintiffs. All three members of the family, after receiving emergency treatment at the house, were admitted to the Uintah County Hospital for treatment of carbon monoxide poisoning. Mrs. Hall also received treatment for second degree burns caused by her collapse on the grill over the floor heater. As a result of the incident, substantial medical bills were incurred by the family,

and Mr. Hall remained unable to work for an extended period. Plaintiffs initiated this action to recover medical expenses, lost wages and other damages incurred as a result of the malfunctioning floor furnace, relying on the theories of negligence, breach of both implied and express warranties, and strict liability. The trial court concluded that the defendants were not negligent, were not strictly liable, and that there was no implied warranty of habitability in Utah. Plaintiffs appeal contending, among other things, that under the standards set forth by this Court in *Hall v. Warren*,[1] defendant landlords breached their duty of care to protect their lessees.

In *Warren I*, this Court reversed the summary judgment in favor of defendants and remanded the case for trial. In so doing the Court observed that a landlord may be subject to a duty of care imposed by a statute or ordinance. Thus, pertinent safety standards established by Vernal City's building code are considered as much a part of a lease as if expressly stated in the contract.[2]

To invoke the rule incorporating existing law into the lease, a party must show:

1. The existence of the statute or ordinance.

2. The statute or ordinance was intended to protect the class of persons which includes the party.

3. The protection is directed toward the type of harm which has in fact occurred as a result of the violation.

4. The violation of the ordinance or statute was a proximate cause of the injury complained of.[3]

Plaintiffs have met this burden.

It was undisputed at trial that Vernal City adopted an ordinance in 1961 modeled on the Uniform Building Code, 1955 Edition, chapter 4–7(1), § 80294.[4] That ordinance says that it is unlawful to install, convert or service any gas furnace without first having obtained a permit from the Vernal City Recorder to do so. The ordinance further states that the installation must thereafter be inspected and approved by the Vernal City gas installation inspector.

The Warrens testified at trial that the furnace was installed by the Warrens' sons sometime between 1962 and 1964, that no permit was obtained and no inspection of the installation ever undertaken by a qualified person. It is undisputed that the ordinance stated above was in effect at the time of the installation. Therefore, plaintiffs have proven the first element, that a statute or ordinance existed at the time of the installation of the furnace.

Plaintiffs next must show that the statute or ordinance was intended to protect the class of persons which includes them. Kent Steed, Vernal City building inspector, testified that the purpose of the furnace installation and inspection ordinance was a safety one: specifically to protect individuals living in a house from the dangers resulting from furnace malfunction caused by improper installation. Steed listed as examples of such malfunctions carbon monoxide fumes, gas leakage or explosion. His testimony was undisputed. Plaintiffs are clearly in the class intended to be covered by the ordinance. Therefore, the second element has been shown, as has the third: the protection is directed toward the type of harm which has in fact occurred.

Finally, plaintiffs must prove that the violation of the ordinance was a proximate cause of the injury complained of. It is

---

1. Utah, 632 P.2d 848 (1981).

2. *Id.* at 850.

3. *Id.* at 850.

4. The ordinance in effect at the time of the lease is to the same effect. Uniform Mechanical Code, 1973, ch. 1, § 104. The ordinance provides that heating systems lawfully installed prior to the effective date of the ordinance may have their existing use continued if the use, maintenance or repair is in accordance with the original design and is not a threat to life or property. The ordinance further provides that the heating system must be maintained in a safe condition with the owner responsible for maintenance.

undisputed that gases from the furnace caused the Halls' illnesses. Joe Hatch, proprietor of Hatch Furnace Repair in Vernal, in uncontroverted testimony, testified that the furnace as installed and maintained was dangerous and that he would have refused to light it. Hatch said that the primary problem with the installation was the venting system. The gas exhaust pipe was located in the house so that in cold weather it would be cooled in such a way that there would not be an updraft, necessary in order to vent noxious gases, but a downdraft resulting in fumes from the furnace being diverted into the house.

Testimony from several witnesses indicated that at the time of the incident at issue here the temperature in Vernal was extremely cold, probably below 0° F. The Halls testified that they used the floor furnace rarely, since alternative heating units in the house were sufficient prior to the severe weather conditions. However, on the morning of the accident, Mrs. Hall had gotten up and turned up the thermostat to the floor furnace since it was too cold for the other heating system to completely warm the house. Within a very short time thereafter, all three members of the family were ill.

Hatch also testified that the furnace was poorly maintained, was in bad condition, and should have been removed from the house. Testimony from both defendants and plaintiffs indicated that the furnace had never been inspected, that defendants were always the ones who lit the pilot light, and that plaintiffs never had reason to look at or work on the furnace.

Thus, it is clear that improper installation and maintenance of the furnace caused the malfunction and plaintiffs' poisoning. Had the furnace been properly installed and inspected as required by the ordinance, the incident would not have occurred.

■ Having established violation by the defendants of the standard of safety set by the ordinance, plaintiffs have established prima facie evidence of negligence. However, this violation may be subject to justification or excuse if the defendants' conduct could reasonably be shown to fall within the standard of reasonable care under the circumstances.[5] Restatement Second of Torts 2a, § 288A (1965) enumerates the following defenses:

a) the violation is reasonable because of the actor's incapacity;

b) he neither knows nor should know of the occasion for compliance;

c) he is unable after reasonable diligence or care to comply;

d) he is confronted by an emergency not due to his own misconduct;

e) compliance would involve a greater risk of harm to the actor or to others.

Defendants' conduct falls within none of these.

Finally, defendants suggest that plaintiffs should have notified defendants if there was a problem with the furnace. There is no evidence that plaintiffs had any actual knowledge or reason to know of the furnace defects. To the contrary, all evidence was to the effect that anything done to the furnace was done by the defendants, including lighting the pilot light, and that plaintiffs had no reason to inspect the furnace.

■ Plaintiffs further testified that defendants twice expressly notified plaintiffs of their intent to repair or replace the furnace. In any event, the plaintiffs' alleged knowledge would not provide justification or excuse. As we said in *Warren I*, if a plaintiff knows the danger and subsequently fails to exercise due care, the defense of contributory negligence is available.[6]

In view of our resolution of the above issue, we need not reach the issue of whether there is a duty imposed on a landlord by an implied warranty of habitability or whether a landlord is strictly liable for defects in rental property.

---

**5.** *Warren I, supra* note 1, at 850–51.

**6.** *Warren I, supra,* note 1, at 851 n. 2.

The judgment of the district court is reversed, and the case is remanded for a determination of damages.

STEWART and DURHAM, JJ., and GEORGE E. BALLIF, District Judge, concur.

HOWE, J., dissents.

ZIMMERMAN, J., does not participate herein.